IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 1:05cr32-WHA |
| | ) | |
| RALPH LINGO | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Ralph Lingo ("Lingo"), who has a prior felony conviction for receiving of stolen property, is charged in a one-count indictment with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). His residence was searched pursuant to a warrant issued by a state court judge. During the search, officers found three firearms. On December 15, 2005, the defendant filed a motion to suppress (doc. # 27), in which he asserts that the search warrant was issued after the search of his residence. In the alternative, Lingo argues that, even if the search warrant was issued before the search, the search warrant was unconstitutionally deficient and that the affidavit filed in support of the warrant did not establish probable cause. Finally, he argues that *Leon*'s[1] good faith exception does not apply because the "experienced officers are the ones who provided this insufficient evidence to the judge for the warrant. Therefore, they knew or should have known there was not a sufficient cause or a 'good faith basis' for the search." (Mot. to Suppress Search, doc. # 27, at 5). The court held an evidentiary hearing on the motion on January 17, 2006, and a supplemental evidentiary hearing on February 21, 2006. Based on

---

[1] *United States v. Leon*, 468 U.S. 897 (1984)

the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

**FACTS**

On April 14, 2003, City of Dothan police sergeant Tony Luker ("Luker") obtained from a state Circuit Court judge a warrant to search the defendant's residence for "Hand Guns, Audio Tapes, Business Records pertaining to Lingo's Mobile Home Repair." (Gov't Ex. 1, attached to Gov't Res. to Def's Mot. to Suppress). The affidavit, in pertinent part, is as follows:

(1) I am Sgt. Tony Luker, of the Dothan Police Department. I am currently assigned to the Criminal Investigation Division as a Sergeant. I am also a State Certified Fire Investigator. The testimony contained in this affidavit is based on three independent witnesses, my personal knowledge and experience as set forth below.

(2) I have been employed with the City of Dothan Police Department for the past 19 years and have been involved in the investigation of several arsons and business fraud cases.

(3) I am investigating several cases involving Ralph Wilson Lingo for arson and theft of property in both Houston and Henry County as well as in the States of Alabama, Georgia and Florida. This investigation is in conjunction with the State of Alabama Fire Marshall's Office.

(4) Ralph Lingo has an extensive Criminal History for the following charges: Assault Second Degree, Theft of Property Second Degree and Receiving Stolen Property Second Degree. He has been convicted of Arson Third Degree, Criminal Mischief Second Degree and Assault Third Degree. The Assault Third Degree was a conviction of a lesser included offense of Sexual Abuse First Degree.

(5) Lingo has business records, which are kept throughout the mobile home and in filing cabinets, which reflects contracts that he has altered and increased the amount owed to him. Lingo preys on the elderly and

    when they question the amount he threatens them into paying him. These records are located at Lingo's office/residence that is located at 10666 Highway 431 South in Newville Alabama. To further describe this property, it is located on what is known in the community as Hatfield Mountain. On the property there is a wooden frame house, a singlewide mobile home and a doublewide mobile home. The doublewide mobile home is Lingo's office/residence. When you enter the driveway of the residence, drive past the house and singlewide mobile home to the light colored doublewide mobile home of Lingo's.

(6)  Lingo has also conspired with another individual in Luverne, Alabama to burn a trailer for insurance purposes. Lingo collected $5,000.00 from this individual. Lingo has made a taped conversation of him and this individual talking about the conspiracy, as well as directions to the trailer.

(7)  There have been several taped conversations between Lingo and different individuals on criminal activity, which is kept at Lingo's office and in a safe.

(8)  This safe contains proceeds of Lingo's criminal activity, files, tapes and guns.

(9)  Also located in Lingo's office/residence are several loaded weapons to include two 380 handguns located on each side of his bed in the bedroom. A 380 located next to a green recliner in the living room. A derringer on an end table in the living room. In the middle room of the mobile home are several shotguns and rifles.

(10)  Lingo is also known to carry a handgun on his person or in his vehicle, a 2001 Dodge pick-up VIN 1B7KC23691J214346. Lingo uses this vehicle to facilitate his criminal activity.

(*Id.*)

  During the hearing before this court, Luker identified Thomas Spradling, Sue Williams, Scott Casper and Deborah Blackstone as the four individuals described in the

affidavit in support of the search warrant.[2] He further testified that he had never before used any of these witnesses to secure a search warrant. In addition, Luker testified that Thomas Spradling was a convicted felon who was incarcerated for theft at the time Luker spoke with him; Williams was charged with setting fire to a trailer, a crime to which she gave a full confession; Casper had been arrested from driving under the influence after Lingo had called the police to report him; and Blackstone, Lingo's ex-wife, had accused Lingo of molesting her children.[3]

After securing the search warrant, Luker and other law enforcement officers arrived at Lingo's trailer on the afternoon of April 14, 2003. Luker testified that Lingo was not home.[4] He knocked on the door but got no response. After calling out and announcing that he had a search warrant, Luker entered the trailer. The officers seized three firearms, two filing cabinets containing assorted business records, a box containing computer disks, assorted audio tapes, assorted business files, and a pill bottle containing assorted pills. Lingo was subsequently indicted for being a convicted felon in possession of a firearm.

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

---

[2] Although Luker testified at the evidentiary hearing that he relied on information provided by these four individuals, in the affidavit, Luker discusses "three independent witnesses." (Aff. at ¶ 1).

[3] Luker testified that Lingo had been convicted of molestation but that his conviction was overturned on appeal. He further testified that Lingo was not retried.

[4] Lingo arrived home sometime later.

4

CONST. AMEND. IV.[5]  "The Amendment protects persons against unreasonable searches of "their persons [and] houses." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Lingo contends that the evidence taken from his residence during the search conducted on April 14, 2003, should be suppressed because Luker did not have a warrant at the time of the search but secured the search warrant after the search was completed. Lingo also contends that the affidavit in this case does not establish probable cause for the issuance of the warrant. Finally, Lingo asserts that, examining the totality of the circumstances, the *Leon* good faith exception does not apply.

### A. Search without a warrant

Searches and seizures inside a home without a warrant are presumptively

---

[5] Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980), unless there exists probable cause and certain, limited exigent circumstances.[6] *See, e.g., Warden v. Hayden*, 387 U.S. 294 (1967); *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983)(A warrantless entry must be justified not only by probable cause but also by exigent circumstances).

The facts do not support Lingo's position that Luker searched his residence without first obtaining a search warrant. At the evidentiary hearing, Luker testified that he obtained the search warrant from Judge Jerry White prior to executing the search. He further testified that the search was conducted in the afternoon, at approximately 4:20 p.m. A photograph of a clock in Lingo's living room appears to indicate the time as 3:50 p.m. Although Lingo testified that the time on the clock was actually 10:20 a.m., a digital photographic image index demonstrates that 26 photographs were taken between 3:42:22 p.m. and 5:03:08 p.m. The court finds that the clock's time is accurately read as 3:50 and not 10:20. Consequently, after careful consideration of all the evidence, the court concludes that Luker secured the search warrant prior to executing the search.

### B. Probable Cause

Lingo next asserts that the affidavit in support of the search warrant fails to establish probable cause because the affidavit contains no information about the witnesses' reliability or the basis of their knowledge. In addition, Lingo asserts that the affidavit failed to specify when or how the witnesses obtained their information.

---

[6] It is undisputed that no exigent circumstances existed to justify searching Lingo's residence without a warrant.

A court reviewing the issuance of a search warrant by a state court judge is not to conduct a de novo probable cause determination, but is merely to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued. *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam).

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States, supra,* 362 U.S., at 271, 80 S.Ct., at 736.

*Gates,* 462 U.S. at 238-239. The reviewing court must decide whether there was a "substantial basis" to find probable cause solely upon consideration of the information presented to the issuing judicial officer. *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). The court concludes that the affidavit in this case fails to establish probable cause.

(1)     *The Basis of the Witnesses' Knowledge.*[7]

Lingo asserts that the affidavit fails to set forth the basis of the witnesses' knowledge. Traditionally, information derived from a confidential informant is scrutinized to determine the informant's reliability, veracity, and basis of knowledge to determine whether the

---

[7] Luker repeatedly testified at the evidentiary hearing that he did not use information from "confidential informants" to secure the search warrant. Rather, he asserted that he used information from "witnesses." For ease of reference, the court will refer to the sources of Luker's information as witnesses.

7

information forms a basis for probable cause. *See Gates*, 462 U.S. at 230. Not only does the affidavit fail to identify the witnesses Luker relied on, the affidavit does not specify how the witnesses know Lingo, and does not contain any information regarding whether the witnesses personally observed any evidence in Lingo's residence. The affidavit does not indicate when the witnesses acquired their information regarding Lingo's alleged criminal activities. The affidavit is fatally deficient because it contains no information concerning how the witnesses know Lingo; how the witnesses know that Lingo is engaged in criminal activity; and fails to establish the relationship between Lingo's residence and any illegal activity carried on or engaged in by Lingo. There is no information within the affidavit that would allow the state judge to determine whether the witnesses' information was stale.

Luker testified that the state judge merely read the affidavit and then signed the warrant. Luker concedes that he neither volunteered additional information regarding the basis of the witnesses' knowledge nor did the judge ask for any additional information. The court therefore concludes that the affidavit lacks sufficient information regarding the actual knowledge of the witnesses.

(2) *The Reliability of the Witnesses*

The affidavit sets forth no facts to establish the credibility or reliability of the witnesses upon whom Luker relied. The affidavit contains none of the usual statements concerning the officer's experience with this informant, the reliability of past information

8

and corroboration of the witnesses' information.[8] In fact, Luker testified that none of these witnesses had ever provided him any information in the past. While it is clear that a witness's reliability would be supported by evidence that the witness had previously given accurate information leading to arrests and convictions, that is not the case here. *See United States v. Gonzales*, 897 F.2d 504, 507 (10th Cir. 1990) (sufficient indicia of reliability existed where officer stated that informant had given accurate information to DEA in the past). The statements of the witnesses are insufficient to establish probable cause because the affidavit contains no facts to demonstrate the veracity of these witnesses. "If an informant is mentioned in the affidavit, the affidavit should also demonstrate the informant's "veracity" and "basis of knowledge." *Martin*, 297 F.3d at 1314. In light of the foregoing, the court concludes that the affidavit contains no basis for the state court judge to conclude that the information from the witnesses was reliable.

(3)   *The Totality of the Circumstances*

In *Illinois v. Gates*, the Court "reaffirm[ed] the totality of the circumstances analysis that traditionally has informed probable cause determinations." 462 U.S. at 238. The court determined that factors such as an informant's veracity, reliability, and basis of knowledge "should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* at 230.

---

[8] *See e.g., United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) (Discussion of usual boilerplate found in affidavits).

The question for this court is whether the information viewed as a whole provided a substantial basis for the issuing judge's finding of probable cause at the time the warrant was issued. *Massachusetts v. Upton*, *supra*. Based on the facts of this case, the court is constrained to conclude that the affidavit does not contain information sufficient to establish a substantial basis for allowing a state court judge to find probable cause. In short, the court concludes that the affidavit fails to demonstrate that probable cause existed for the search of the residence.

### C. The "*Leon*" Good Faith Exception to the Warrant Requirement

The conclusion that the warrant for the search of Lingo's residence was invalid because it failed to establish probable cause does not end the court's inquiry, however. The government argues that the evidence should not be suppressed under the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court recognized a good faith exception to the exclusionary rule for searches conducted pursuant to warrants. Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be served, and the rule should not be applied, when officers engage in "objectively reasonable law enforcement activity." 468 U.S. at 918-19. In particular, the Court held that the suppression of evidence would have no deterrent effect "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. Under *Leon*, searches conducted pursuant to warrants will rarely require suppression; however, the *Leon* court did identify four situations in which suppression would still be appropriate. *Id.* at 923.

These situations are: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the issuing magistrate wholly abandoned his judicial role in the manner condemned in" *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979); (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id.* (internal quotation marks omitted).

The first step for the court, therefore, is to determine if any of the four circumstances exist in this case. The defendant argues that the first *Leon* limitation, whether the magistrate judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, is applicable. Lingo concedes that Luker did not lie to the Judge to secure the search warrant. Rather, he argues, Luker made "misrepresentations by omission," such as Luker's failure to set forth in the affidavit the basis for his opinion that his witnesses were reliable, and that the Judge should have been informed that the witnesses were all either incarcerated on fraud charges, were facing pending criminal charges, or were being criminally investigated at the time they provided Luker information against Lingo. Lingo claims that these omissions, in effect, were of "such critical import . . . as to qualify as a reckless disregard for the truth."

11

(Memorandum addressing Applicability of *United States v. Leon*, 468 U.S. 897 (1987), doc. # 36, at 3). Lingo's argument fails for the simple reason that he concedes that Luker's statements were not false. Further, Lingo has not shown that these statements were made for the purpose of misleading the issuing Judge. Next, nothing in this case suggests that the judge who issued the warrant abandoned his judicial role. Consequently, the first two grounds are inapplicable here.

The remaining *Leon* limitations are whether the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and whether the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. The defendant relies on the third exception, arguing that Luker did not put in the affidavit information readily at his disposal which would have established probable cause. In essence, the argument of the defendant is this: the officer left so much information out of the affidavit that he reasonably could not have believed that what he did put in the affidavit was sufficient.[9] In *United States v. Martin*, *supra*, the court

---

[9] The defendant is asking the court to measure the officer's belief about probable cause based on what is left out of an affidavit rather than what it contained. The court rejects this approach. First, this approach is inconsistent with *United States v. Leon*, 468 U.S. 897 (1984), because *Leon* requires the court to determine whether the affidavit is "lacking in indicia of probable cause …" That determination properly must look to what is in the affidavit, not what was left out of it. Second, the argument confuses the third *Leon* exception with the first exception: where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" *Id.* at 923. There is no evidence before the court that Luker knew any fact which would undermine the existence of probable cause. *See United States v. Martin*, 297 F.2d 1308, 1320 (11th Cir. 2002) (holding that officer "did not intentionally omit facts that would have defeated a finding of probable cause."). *See also United States v. Reilly*, 76 F.3d 1271, 1280 (2nd Cir.1996) (holding that *Leon* good faith exception "does not protect searches by officers who fail to provide all potentially adverse information to the issuing judge").

held that a reviewing court may look outside the four corners of an affidavit to determine whether an officer acted in good faith when relying upon an invalid warrant. 297 F.3d at 1309. *See also United States v. Robinson*, 336 F.3d 1293 (11th Cir. 2003) (a court may look beyond the four corners of the affidavit, but is not required to in order to find good faith reliance). The court's approach to this question is instructive because of the court's description of the affidavit and its conclusions about it.

> [I]t is clear that the facts contained in the affidavit leave much to be desired. However, despite its deficiencies as to the specific dates and times and exact links to . . . [the defendant], we find that it was *not entirely unreasonable* for . . . [the officer] to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause.

*Martin*, 297 F.3d at 1315.

The question before the court is whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization. *United States v. Taxacher*, 902 F.2d 867 (11th Cir. 1990). The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922 n. 23.

To determine whether Luker's belief in the existence of probable cause was reasonable, the court must determine whether the affidavit is merely a "bare-boned" affidavit containing only conclusory allegations; such an affidavit does not meet *Leon's* good faith exception. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998). In determining

13

whether the affidavit is "lacking in indicia of probable cause," the court must look to what is in the affidavit, not what was left out of it. *See generally Leon*, *supra*. Thus, the fact that Luker could have put more information in the affidavit is not dispositive. Rather, the question is whether it was reasonable for Luker to believe that what he included in the affidavit was sufficient to establish probable cause.

The court concludes that the affidavit constitutes more than just a "bare bones" allegation of wrongdoing. The affidavit provides information concerning the identity of the alleged wrongdoer, the scope and extent of Luker's investigation, and the location of the place to be searched. In addition, the affidavit (1) links Lingo to arson and theft of property; and (2) links the criminal activity to Lingo's residence. The affidavit also contains the following facts: (1) Lingo maintains business records at his home; (2) those business records are located at 10666 Highway 431 South, Newville in a community known as Hatfield Mountain; (3) the business records are stored in filing cabinets as well as a safe; (4) tape recordings of conversations are stored in a safe in his office; (5) two loaded handguns are kept on each side of Lingo's bed in his bedroom; and (6) other guns are located in Lingo's residence and truck. The affidavit describes the weapons as well as their locations. The affidavit contains information that connects criminal activities to items in the trailer, including a safe concealing a firearm, files and tape recordings.

Luker testified that he interviewed Lingo's secretary, Rhonda Sue Williams, on April 10 and 11, 2003, within three days of executing the search warrant at Lingo's residence on April 14, 2003. Williams informed Luker that she had been in Lingo's trailer within one or

two days of speaking with Luker. Williams was being held in jail on criminal charges at the time she was questioned by Luker and she admitted to engaging in criminal activity herself. *See United States v. Foree*, 43 F.3d 1572, 1576 (11th Cir. 1995) (witness's veracity can be established by "creating circumstances under which she is unlikely to lie" because "if the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly."). All three witnesses gave Luker information that he was able to corroborate by comparing the information provided as well as through independent investigation.

> The exclusionary rule is meant to guard against police officers who purposely leave critical facts out of search warrant affidavits because these facts would not support a finding of probable cause. This is not the case here. In fact, the mistakes made primarily that of the issuing judge who relied, in part, upon past experience with [the officer] rather than requiring that specific dates and times be included on the face of the affidavit itself. Unless the issuing judge wholly abandons his role (which we have determined he has not), then the officer need not pay for the judge's mistake and the *Leon* good faith exception should apply.

*Martin*, 297 F.3d at 1320.

Based on the contents of the affidavit, Luker's knowledge of Lingo's criminal activity and the totality of the circumstances, *see United States v. Taxacher*, *supra*, the court concludes that Luker was not dishonest or reckless in preparing the affidavit and his belief that probable cause existed was not so objectively unreasonable as to warrant exclusion of the evidence. *United States v. Leon*, 468 U.S. at 926.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the

defendant's motion to suppress be denied. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **March 15, 2006.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of March, 2006.

           /s/Charles S. Coody
     CHARLES S. COODY
     CHIEF UNITED STATES MAGISTRATE JUDGE